IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SYDNEY STONE,<br><br>   Plaintiff,<br><br>vs.<br><br>CJ DEROSA, et. al.,<br><br>   Defendants. | No. CV 07-680-PGR-CRP<br><br>**REPORT AND RECOMMENDATION** |

Pending before this Court is Defendants' Motion for Summary Judgment on Behalf of Defendants Lappin and Watts (Individual Capacity Claims). (Doc 25). Defendants Lappin and Watts argue this Court lacks personal jurisdiction over them. Defendant Lappin is Director of the Federal Bureau of Prisons ("BOP") and Defendant Watts is Administrator of National Inmate Appeals of the Federal BOP. Defendants Lappin and Watts contend they have insufficient minimum contacts with the forum state of Arizona for the court to assert personal jurisdiction over them. They further contend Plaintiff's claims assert supervisory liability, which is insufficient for claims under Bivens v. Six Unknown Named Agents of the Federal Bureau of Investigation, 403 U.S. 388 (1971). Responding to Defendants' Motion

1  for Summary Judgment, Plaintiff argues personal jurisdiction exists because the alleged
2  injury in this case, the rejection of a book Plaintiff paid Barnes & Noble to send inmate
3  Libretti, was based on a BOP policy enforced by Defendants. This Court recommends that
4  the District Judge, after his independent review and analysis, DENY Defendants' Motion for
5  Summary Judgment. The injury in this case, the rejection of a book with no notice to
6  Plaintiff, was based on a BOP policy that both Defendant Lappin and Defendant Watts
7  enforced.

8  FACTUAL AND PROCEDURAL BACKGROUND

9  Plaintiff is a private citizen who alleges in March 2005 she purchased a book at Barnes
10 & Noble in Colorado and then paid Barnes & Noble to mail the book to inmate Joseph
11 Libretti at Federal Correctional Institution-Phoenix ("FCI-Phoenix"). (Doc 1). She further
12 alleges Barnes & Noble mailed the book to inmate Libretti with a return address identifying
13 the sender as Barnes & Noble, Glendale, CO. Pursuant to BOP policy, prison officials
14 rejected the package at the post office and it was returned to Barnes & Noble. Prison
15 officials did not notify Plaintiff or inmate Libretti that the book was rejected.

16 Plaintiff alleges the package was rejected based on BOP Program Statement 5800.10,
17 Chapter 3 at 310, which requires additional labeling on packages from bookstores sent to
18 inmates when the package is not pre-approved via form BP-331. The policy requires prison
19 officials reject such a package unless it is marked "Authorized by Bureau Policy" or similar
20 language indicating that the contents are authorized by Bureau Policy.[1]

---

[1] This policy was the subject of a previous lawsuit filed by another inmate at FCI-Phoenix. See Powell v. Ellis, cv-04-625-PHX-DGC (HCE). In November 2006, relying on Ashker v. Cal. Dept. Of Corrections, 350 F.3d 917, 922-924 (9th Cir.2003), the District Court held that prison officials violated the plaintiff's "First Amendment rights by approving of and enforcing a policy requiring packages of books obviously coming from bookstores or publishers to be subjected to additional labeling." (cv-04-625-PHX-DGC (HCE), Doc 44). To remedy the violation, the Court entered a permanent injunction enjoining prison officials from enforcing BOP Program Statement 5800.10, Chapter 3 at 310 to the extent it required rejecting a package from bookstores or publishers if it lacked "Authorized by Bureau Policy" or other similar language. (cv-04-625-PHX-DGC (HCE), Doc 47).

1 Defendants Lappin and Watts filed a Motion for Summary Judgment (Individual Capacity 2 Claims) arguing they lack the requisite minimum contacts with the state of Arizona for 3 personal jurisdiction to be asserted over them. They contend they are only generally 4 involved in the "various components of the Bureau of Prisons within the State of Arizona" 5 and this general involvement "is not enough to satisfy due process concerns" that accompany 6 questions of personal jurisdiction. (Doc 27). Defendant Lappin states he is the Director of 7 the Federal BOP and he is located in Washington, D.C. He asserts he has only general 8 supervisory responsibility over FCI-Phoenix and no control of day to day operations. For 9 his part, Defendant Watts states he is the National Inmate Appeals Administrator for the 10 Federal BOP and he has final signatory authority for all administrative remedy responses to 11 inmate complaints filed at the Central Level with BOP. Both Defendants state they did not 12 develop the policy at issue in this case.

13 The only specific involvement Defendants identify with this lawsuit is Defendant Watts' 14 rejections of inmate Libretti's appeals in this matter and Defendant Lappin's overall control 15 of BOP policies. Calling this specific involvement "ministerial" in nature, Defendants argue 16 such involvement "is too random, fortuitous, and attenuated to support exercise of *in* 17 *personam* jurisdiction in this Court." (Doc 27). Defendants also argue Plaintiff's alleged 18 *respondeat superior* theory of liability is not viable in a Bivens claim.

19 Plaintiff contests Defendants' Motion for Summary Judgment, arguing both Defendants 20 enforced the unconstitutional policy which required additional labeling of packages from 21 booksellers or publishers. Plaintiff notes Defendant Lappin, as the Director of BOP, is 22 responsible for BOP policies and their enforcement, which includes enforcement of the 23 policy at issue in this case. Plaintiff further notes, Defendant Watts, as Administrator of 24 National Inmate Appeals, has ultimate authority to grant or deny inmate appeals. In this 25 case, Defendant Watts denied any remedy for rejecting the package. He determined the 26 package was properly rejected because it did not have the additional labeling required by the 27 BOP policy at issue.

28

1    Plaintiff further argues she does not allege liability under a theory of *respondeat superior*.
2 Rather, Plaintiff contends Defendants are directly responsible because they "had the power
3 to stop the enforcement of [the] policy" and instead "continued enforcement of that policy
4 or at least turned a blind eye to its enforcement."

5 ANALYSIS

6    A court must grant summary judgment if the pleadings and supporting documents, viewed
7 in the light most favorable to the non-moving party, "show that there is no genuine issue as
8 to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.
9 Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Under
10 summary judgment practice, the moving party bears the initial responsibility of presenting
11 the basis for its motion and identifying those portions of the record, together with affidavits,
12 which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477
13 U.S. at 323.

14    If the moving party meets its initial responsibility, the burden then shifts to the opposing
15 party who must demonstrate the existence of a factual dispute and that the fact in contention
16 is material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 250 (1986); see also Triton
17 Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir.1995). Rule 56(e) compels the
18 non-moving party to "set out specific facts showing a genuine issue for trial" and not to "rely
19 merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e); Matsushita Elec.
20 Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  The opposing party
21 need not establish a material issue of fact conclusively in its favor; it is sufficient that "the
22 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
23 versions of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253,
24 288-89 (1968).  However, Rule 56(c) mandates the entry of summary judgment against a
25 party who, after adequate time for discovery, fails to make a showing sufficient to establish
26 the existence of an element essential to that party's case and on which the party will bear the
27 burden of proof at trial. Celotex, 477 U.S. at 322-23.

28

- 4 -

1 2 3 4 5 6 7 8   When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. But, if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 249-50.

9 10 11 12 13 14 15 16 17 18 19 20   The issue in the pending Motion for Summary Judgment is whether this Court has personal jurisdiction over Defendants Lappin and Watts. A federal district court may only exercise personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). In addition, the exercise of personal jurisdiction must comport with the defendant's due process right. Due process requires that defendants have certain minimum contacts with the forum state. Intl. Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). A court's exercise of personal jurisdiction over a non-resident defendant can be general or specific. If a defendant's contacts with the state are substantial or continuous and systematic, general jurisdiction can be asserted even if the cause of action in not related to the substantial activities. Haisten v. Grass Valley Med. Reimbursement Fund, Ltd., 784 F.2d 1392, 1396 (9th Cir.1986).

21 22   In the Ninth Circuit, courts apply a three-prong test to determine the due process limits of specific jurisdiction.

> (1)The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws[;] (2) [t]he claim must be one which arises out of or results from the defendant's forum-related activities [; and] (3) [e]xercise of jurisdiction must be reasonable. Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995) (citations omitted). All of these requirements must be met for jurisdiction over the defendant to comply with due process. Id.
>
> "Purposeful availment requires that the defendant engage in some form of affirmative conduct allowing or promoting the transaction of business within the forum state."

- 5 -

1
2
3
4

Shute v. Carnival Cruise Lines, 897 F.2d 377, 381 (9th Cir. 1990), rev'd on other grounds, 499 U.S. 585, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991). This requirement ensures that a defendant "will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." Burger King v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985) (citations and internal quotations omitted).

Doe v. Am. Natl. Red Cross, 112 F.3d 1048, 1050-51 (9th Cir.1997). In Am. Natl. Red Cross, a tort case arising from the contraction of AIDS following a blood transfusion, the plaintiff sued the American Red Cross, the University of Arizona, various doctors, several blood banks, and the Director of the Federal Drug Administration's Division of Blood and Blood Products ("FDA administrator"). Id. at 1050. Plaintiff argued all these defendants contributed to her husband contracting AIDS from a blood transfusion he received at an Arizona hospital. Specific to the FDA administrator, the plaintiff argued the administrator "failed to properly ensure a blood supply free from the AIDS virus." Id. at 1050. The FDA administrator contended the Arizona courts lacked personal jurisdiction over him and the Ninth Circuit agreed. The Court held the FDA administrator had not engaged in affirmative conduct allowing or promoting the transaction of business in Arizona because he did not direct his activities at Arizona and did not control distribution of blood products. Id. at 1051. Furthermore, the Ninth Circuit found Plaintiff's injury did not arise out of the FDA administrator's alleged activities. Id. at 1051.

Personal jurisdiction can also be found where (1) intentional actions (2) expressly aimed at the forum state (3) cause harm, the brunt of which the defendant knows is likely to be suffered in the forum state. Core-Vent Corp. v. Nobel Industries AB (9th Cir.1993) (citing Calder v. Jones, 465 U.S. 783 (1984)). In Calder, the Supreme Court held that California had personal jurisdiction over two Florida reporters in a libel action arising out of their intentional publication of a story drawn from California sources where the brunt of the harm, in terms of emotional distress and damage to the plaintiff's professional reputation, was in California. 465 U.S. at 788-89. The Court reasoned that the defendants expressly aimed their actions at California and knew their article would have a potentially devastating impact on the plaintiff in California. Id. at 789-90.

- 6 -

1    In the pending Motion for Summary Judgment before this Court, Defendants argue that
2 it is Plaintiff's burden to establish personal jurisdiction, Menken v. Emm, 503 F.3d 1050,
3 1056 (9th Cir.2007), and that Plaintiff cannot establish that Defendants Lappin and Watts are
4 residents of Arizona or have meaningful contacts with the State.  Furthermore, they contend
5 Plaintiff cannot establish the necessary minimum contacts with the State to satisfy due
6 process.
7    Defendants Lappin and Watts argue they have only general responsibility over FCI-
8 Phoenix, directing various components of the BOP in Arizona.  They contend such general
9 responsibility is insufficient to satisfy due process.  While Defendants Lappin and Watts
10 admit specific involvement in that Defendant Watts rejected the administrative appeals in this
11 case and Defendant Lappin had overall responsibility for the policy at issue, they maintain
12 such involvement was too random, fortuitous, and attenuated to support personal jurisdiction.
13 This Court disagrees.
14    The alleged injury in this case derives from a BOP policy that both Defendants Lappin
15 and Watts are charged with enforcing.  Plaintiff has provided evidence showing the book
16 she sent to inmate Libretti via Barnes & Noble was rejected pursuant to a BOP *policy*
17 contained in Program Statement 5800.10, Section 310.  Viewed in the light most
18 favorable to Plaintiff, the evidence demonstrates that the alleged injury in this case was
19 the result of deliberate enforcement at FCI-Phoenix of the BOP policy requiring
20 additional labeling.
21    Given that a BOP policy is a critical issue in this case, Defendant Lappin's position as
22 Director of the BOP is sufficient conduct and connection with Arizona that he should
23 reasonably anticipate being haled into court here, see World-Wide Volkswagen Corp. v.
24 Woodson, 444 U.S. 286, 297 (1980), thus satisfying the requirements of due process.
25 Defendant Lappin's position as Director gives him overall authority over the BOP and its
26 policies.  See 18 U.S.C. §§ 4041and 4042(a)(1) ("the [BOP] . . . shall have charge of the
27 management and regulation of all Federal penal and correctional institutions"); 28  C.F.R.
28 §§  0.95 (a) ("The Director of the [BOP] shall direct all activities of the [BOP] including:

1 . . .[m]anagement and regulation of all Federal penal and correctional institutions") and 2 0.96(o) ("The Director of the [BOP] is authorized to exercise or perform any of the authority, 3 functions, or duties conferred or imposed upon the Attorney General ... , including the taking 4 of final action in the following-described matters:. . . . [p]romulgating rules governing the 5 control and management of Federal penal and correctional institutions. . . .")

6 Personal jurisdiction over Defendant Watts is also appropriate. Defendant Watts, as the 7 appeals administrator, denied Plaintiff's appeal based on the policy of Program Statement 8 5800.10. Defendant Watts argues his denial of the appeal was a ministerial act, which was 9 too random, fortuitous, and attenuated to support personal jurisdiction. (Doc. #48 at 4.) The 10 Court disagrees that denial of an inmate's administrative request is a ministerial act, which 11 is defined as an activity that is "absolute, fixed, and certain and in the performance of which 12 there is no discretion." The Law Dictionary, (Amy B. Brann, ed., Anderson Publishing Co., 13 7th ed. 1997). Because Watts' denial was the result of the policy, it is a significant contact 14 and sufficient to be the basis of personal jurisdiction. See Burger King, 471 U.S. at 475.

15 Defendants cite three cases to support their position that this Court lacks personal 16 jurisdiction over them. Defendants' reliance on these cases is misplaced as all three are 17 distinguishable from the pending case. In Doe v. Am. Natl. Red Cross, 112 F.3d 1048, the 18 FDA administrator who was sued when Plaintiff's husband contracted AIDS from a blood 19 transfusion in an Arizona hospital, did not control or enforce a policy that led to Plaintiff's 20 injury. Plaintiff attempted to sue the FDA administrator based on the administrator's general 21 involvement in blood products. There was no specific action that connected the FDA 22 administrator to Plaintiff's injury. In the case before this Court, Defendants Lappin and 23 Watts are both directly connected to Plaintiff's alleged injury because it resulted from their 24 enforcement of specific national BOP policy.

25 Defendants' reliance on the other two cases is misplaced as well because the injuries in 26 those cases occurred as a result of prison officials at a prison facility failing to take action. 27 See Smith v. United States, 2007 WL 2155651, at *5 (July 26, 2007) (Plaintiff alleged 28 exposure to asbestos, no allegation of a BOP policy that resulted in exposure to asbestos);

1  See also Mansoori v. Lappin, 2005 WL 2387599 (D.Kan.2005) (Plaintiff alleged exposure
2  to tobacco smoke in a non-smoking facility.  Plaintiff alleged prison officials at the facility
3  were *not* enforcing BOP policy).  The alleged injuries did not occur because an official was
4  enforcing BOP policy.

5  Finally, although Defendants are correct that there is no *respondeat superior* liability
6  under § 1983, and, therefore, a defendant's position as the supervisor of persons who
7  allegedly violated Plaintiff's constitutional rights does not impose liability, Monell v. New
8  York City Department of Social Services, 436 U.S. 658, 691-92 (1978), direct personal
9  participation is not the only predicate for § 1983 or Bivens liability.  Anyone who "causes"
10 any citizen to be subjected to a constitutional deprivation is also liable.  Johnson v. Duffy,
11 588 F.2d 740, 743-44 (9th Cir.1978), (citing Sims v. Adams, 537 F.2d 829 (5th Cir.1976)).
12 "The requisite causal connection can be established not only by some kind of direct personal
13 participation in the deprivation, but also by setting in motion a series of acts by others which
14 the actor knows or reasonably should know would cause others to inflict the constitutional
15 injury."  Id. at 744, citing Beverly v. Morris, 470 F.2d 1356 (5th Cir.1972).

16 Here, Plaintiff is asserting that his harm is the result of the enforcement of a BOP policy.
17 By implementing a policy and allowing it to continue to be enforced, a supervisor sets in
18 motion a series of acts by others which he should reasonably know would cause others to
19 inflict the constitutional deprivation.  See Hydrick v. Hunter, 500 F.3d 978, 988 (9th
20 Cir.2007) (inmate sex-offenders sufficiently stated claims against supervisory officials where
21 they alleged that the officials created policies and procedures that violated their constitutional
22 rights and that defendants were wilfully blind to the constitutional violations committed by
23 subordinates).

24 RECOMMENDATION

25 For the foregoing reasons, the Magistrate Judge recommends that the District Court, after
26 its independent review, DENY Defendants' Motion of Summary Judgment (Individual
27 Capacity Claims).  (Doc 25).

28

1  Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within 10
2  days after being served with a copy of this Report and Recommendation.  If objections are
3  not timely filed, the party's right to de novo review may be waived.  If objections are filed,
4  the parties should direct them to the District Court by using the following case number: CV-
5  07-680-PHX-PGR.
6  The Clerk of the Court is directed to send a copy of this Report and Recommendation to
7  all parties.
8  DATED this 18th day of February, 2009.

*[signature]*

**CHARLES R. PYLE**
UNITED STATES MAGISTRATE JUDGE