**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sydney Stone, ) | |
| ) | CV 07-0680-PHX-PGR |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| CJ Derosa, et al., ) | |
| ) | |
| Respondents. ) | |
| _____) | |

Currently before the Court is Plaintiff Sydney Stone's ("Stone") Motion Seeking to Alter or Amend the Judgment Denying Plaintiff's Motion Seeking A Preliminary Injunction. The Court will now address the Motion to Amend. (Doc. 48.)

Stone contends that the March 2, 2009 Order incorrectly dismissed in its entirety her Complaint. She contends that Defendants Harley Lappin, Director of the Federal Bureau of Prisons, and Harell Watts ("Watts"), Administrator of National Inmate Appeals, (referred to collectively as "Defendants"), should remain as defendants in this case in their official capacities. She further contends that CJ DeRosa ("DeRosa"), former Warden of Federal Correctional Institute Phoenix (FCI Phoenix), should remain as a defendant in his individual capacity. The primary discord involves the matter of whether this Court has personal jurisdiction over the Defendants. Therefore, for the sake of clarity, the Court will set forth with more detail the issue of personal jurisdiction over the Defendants.

I.      Procedural Background

Previously pending before the Court was Defendants Watts and Lappins' Motion for

Summary Judgment wherein they argued that this Court lacked personal jurisdiction over them on the grounds that they had insufficient "minimum contacts" with the forum state of Arizona. Plaintiff responded that the District Court of Arizona could exercise personal jurisdiction over the Defendants based upon FCI Phoenix's refusal of a package sent by Plaintiff to inmate Joseph Libretti ("Libretti") who, at the time, was housed at FCI Phoenix.[1] Plaintiff contends that the refusal was based on a Bureau of Prison ("BOP") policy enforced at FCI Phoenix and endorsed by Defendants and such endorsement and enforcement is sufficient for this Court to exercise personal jurisdiction.

As is procedure, Magistrate Judge Pyle drafted a Report and Recommendation (Doc. 32) for this Court wherein he opined that this Court could in fact exercise personal jurisdiction over Lappin and Watts. This Court rejected the Report and Recommendation (Doc. 43) and granted Defendants' Motion for Summary Judgment. (Doc. 44.)

In that Order, the Court explained the reasons why it could not exercise personal jurisdiction over Defendants Lappin and Watts. As to Lappin, the Court found that Lappin could not be subject to suit in just any district based on the assertion that an agency regulation purportedly caused a constitutionally tortious effect upon a plaintiff, nor could he be subject to personal jurisdiction in any district strictly based on his position as an agency head. Schwarzenegger v. Fred Martin Motor Co., 374 F. 3d 797, 803 (9th Cir. 2004). The Court reasoned that not only would this open the floodgates to universal jurisdiction by federal courts, but it would fundamentally violate the notions of fair play and substantial justice, the foundation of a federal court's exercise of personal jurisdiction. See Miller v. Meyer, 311 U.S. 475, 463 (1940).

Citing Ninth Circuit authority, this Court determined that, as to Watts, it could not exercise personal jurisdiction because the Complaint failed to allege sufficient contact

---

[1] For purposes of clarification, the package was a book purchased by Plaintiff and sent directly to FCI Phoenix by Barnes and Noble by means of the postal service.

between Watts and Arizona. "[A] high degree of relationship is needed where there is only one contact with the forum state. In order to support personal jurisdiction with only one contact with the forum state, the cause of acting must arise out of that particular purposeful contact of the defendant with the forum state." Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987). The Court found no such relationship existed in the instant matter. As the Administrator of National Inmate Appeals, Watts not only had the authority, but also the duty to determine whether to grant or deny inmate appeals from inmates all over the nation. The denial at issue was a single event that occurred *outside* the State of Arizona *nine months after* the package was rejected. Watts merely responded with an out-of-state act (the denial from Washington) to an unsolicited grievance appeal submitted to him by an inmate who happened to be housed in Arizona.

II.     Factual Background

In her Complaint, non-prisoner Stone alleges that her First Amendment rights were violated by a mail policy at FCI Phoenix where Libretti was housed as an inmate at the time. Pursuant to a policy at the relevant time, a book purchased by Stone at Barnes & Noble in Glendale, Colorado was sent in March 2005 to FCI Phoenix directly from Barnes and Noble to Libretti. The package was refused by FCI Phoenix staff from the Postal Service because the Barnes and Noble return address label was placed over another label, raising suspicion as to a possible threat to the security of FCI Phoenix. See infra. Based upon FCI Phoenix's refusal to accept the package, the book was returned to Barnes & Noble. FCI Phoenix did not apprise Plaintiff or Libretti of the refusal or the reason therefor.

Plaintiff seeks compensatory and punitive damages from Defendants Lappin and Watts.[2] She asserts that Lappin and Watts are individually responsible for her alleged

---

[2]     Stone also seeks damages from DeRosa.

3

injuries[3] because based upon their employment positions, they enforced and endorsed the mail policy at FCI Phoenix at the relevant time.

III.   Analysis

   A.   Lappin and Watts

It is well established that *the Plaintiff of a lawsuit bears the burden of establishing personal jurisdiction.* Menken v. Emm, 503 F.3d 1050, 1056 (9th Cir. 2007); Supplier's City SA DE CV v. EFTEC North America, LLC, 2007 WL 1655989 *1 (D. Ariz. 2007)(emphasis added). A federal district court may only exercise personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Here, personal jurisdiction must be established under the Arizona Long Arm Statute.[4] In addition to satisfying the requirements of state law, the exercise of personal jurisdiction must not offend a defendant's due process rights. In the Ninth Circuit, a federal court's exercise of personal jurisdiction over a nonresident defendant may be either general or specific. "If the defendant's activities in the state are 'substantial' or 'continuous and systematic,' general jurisdiction may be asserted even if the cause of action is unrelated to those activities." Haisten v. Grass Valley Med. Reimbursement Fund, Ltd., 784 F.2d 1392, 1396 (9th Cir. 1986) (citation omitted).

   General Jurisdiction

Here, it is clear from the Complaint that there has been no substantial or continuous and systematic activities between either Lappin or Watts and the State of Arizona. It is

---

   [3]   Plaintiff alleges that her injuries include loss of her First Amendment right to communicate her ideas because the book she sent to prisoner Libretti was refused.

   [4]   The Arizona long-arm statute provides for personal jurisdiction co-existent with the limits of federal due process. Batton v. Tennessee Farmers Mut. Ins. Co., 736 P.2d 2, 4 (1987). Due process requires that nonresident defendants have *certain minimum contacts with the forum state*, so that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)(emphasis added).

4

undisputed that the Defendants are not residents of the State of Arizona. Furthermore, Plaintiff fails to allege that these Defendants have had substantial or continuous and systematic contacts with this district within the meaning of the law. Id. Therefore, general jurisdiction does not exist. Id.

Specific Jurisdiction

"Due process requires that nonresident defendants have certain minimum contacts with the forum state, so that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Broken down even further, determining whether this court has specific jurisdiction over nonresidents depends upon the extent of the contacts they have had with the State of Arizona. For purposes of determining whether specific jurisdiction exists, the Ninth Circuit utilizes the following three prong test:

> First, the Defendant must "purposefully avail[5] [himself] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum's law. Second, the claim must arise out of [the] forum-related activities. Third, the exercise of jurisdiction must be reasonable." Myers v. Bennett Law Offices, 238 F.3d 1068, 1071 (9th Cir.2001). *All of these requirements* must be met for jurisdiction over the defendant to comply with due process. Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995). (emphasis added). "Once the defendant has challenged the exercise of personal jurisdiction, *the plaintiff bears the burden of showing that the court has jurisdiction.*" Butcher's Union Local No. 498 v. SDC Investment, Inc., 788 F.2d 535, 538 (9th Cir.1986) (citing KVOS, Inc. v. Associated Press, 299 U.S. 269 (1936))(emphasis added).

Myers, 238 F.3d at 1071. Stone's complaint fails to raise factual allegations that would permit the Court to conclude that Lappin and Watts purposefully availed themselves of the

---

[5] Purposeful availment requires that the defendant engage in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." Shute v. Carnival Cruise Lines, 897 F.2d 377, 381 (9th Cir. 1990), rev'd on other grounds, 499 U.S. 585, 622 (1991). This requirement ensures that a defendant "will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985)(citations and internal quotations omitted).

5

privileges of conducting activities in Arizona such that they had the necessary minimum contacts with the State of Arizona to satisfy the due process clause or that personal jurisdiction is reasonable in light of the specific facts alleged. Myers, 238 F.3d at 1071.

Neither Watts nor Lappin purposely availed themselves to the benefits and protections of the laws of Arizona. Id. They do not have professional businesses in Arizona nor do they conduct personal business in Arizona. Rather, Lappin and Watt's business addresses and activities were at all relevant times at the Bureau of Prisons Central Office in Washington, D.C. Furthermore, with regard to the relevant matter, Lappin and Watts may have been charged with the overall responsibility of generally directing various components of the Bureau of Prisons within the State of Arizona, (and presumably other states as well), but this general involvement is not enough to satisfy due process concerns. Omeluk, 52 F.3d at 270. The only *specific* allegations of involvement regarding Watts is that he signed appeal rejection notices (the instant appeal was ninth months after the rejection and was sent from an individual outside of the State of Arizona, albeit regarding an Arizona inmate). Regarding Lappin, Plaintiff asserts that he "could have" implemented a change in the Bureau of Prisons Regulations concerning mail policies. This involvement does not amount to sufficient contact under the minimum contacts analysis and is far too attenuated to support the exercise of personal jurisdiction in this Court. As to the reasonableness of exercising jurisdiction, neither Lappin nor Watts had any reason to believe that as employees working and living in Washington D.C., their roles in the federal prison regulatory system would expose them to the "power of the courts in Arizona." Doe v. American Nat'l. Red Cross, 112 F.3d at 1051. Thus, the requirements necessary to establish specific jurisdiction, while still comporting with due process, were not established by Plaintiff. Omeluk, 52 F.3d at 270. Accordingly, this Court does not have jurisdiction over Lappin and Watts and they were properly dismissed from this case.

B. DeRosa

After reviewing the motion for summary judgment originally filed by Defendants

Lappin and Watts, the Report and Recommendation, and the objections thereto, it has come to this Court's attention that although DeRosa filed objections to the Report and Recommendation, he did not file *his own* motion for summary judgment, nor did he join in the motion for summary judgment filed by his Co-Defendants. Despite this, DeRosa was still properly dismissed from this case.

Relevant Background

In March 2005, Plaintiff purchased a book from Barnes and Noble in Glendale, Colorado and it was sent directly to inmate Joseph Libretti ("Libretti") at FCI Phoenix. For security purposes, the guard picking up the mail for FCI Phoenix does a cursory inspection of the packages prior to bringing them to FCI Phoenix. Inmate Systems Officer Michael T.Hammet ("Hammet") was the inspecting officer that day. He stated that the return address label on the package identifying the sender as a Barnes & Noble store in Glendale, Colorado, appeared suspicious.[6] Consequently, he refused to accept the package for security purposes. Plaintiff alleges that Hammet refused the package at the post office and returned it to the bookstore because the package did not bear the notation "Authorized by Bureau Policy." She contends that as a result of the refusal and the fact that neither she nor Libretti were notified of the refusal, her First Amendment rights were hampered and her right to communicate her ideas with a prisoner, namely Libretti, "was chilled."

Despite Plaintiff's assertion that the address on the package clearly identified Barnes and Noble as the sender, a declaration made by Hammet establishes that the package was in

---

[6] In the pending matter, the Barnes and Noble return address label was placed *over* another label, raising suspicion as to a possible threat to the security of FCI Phoenix. By statute and regulation, the Bureau is charged with the responsibility for the protection of individuals in its custody, as well as the security, discipline, and good order of its institutions. For those reasons, the Mail Management Manual at Section 101 provides that "[t]he Inmate Systems Manager shall be accountable for all functions of the department including the processing of inmate and official mail. ... Special care shall be given to the detection of contraband and other prohibited acts." Id. An unauthorized package, under Program Statement 5800.10, Section 310, "shall be refused and returned." Id.

fact considered suspicious based on the return address label. He stated that he marked the package "RTS Refused Not Authorized"and he refused to accept the package "because it appeared the Barnes and Noble label had been placed over the top of a different label. Based on the training I received through the BOP, I viewed this as a possible threat to the security of the institution due to the suspicious nature of the return address label."[7] Hammet explained that staff was and is permitted to refuse packages at the Postal Service for security reasons. There were no specific allegations made involving DeRosa regarding the incident.

Respondeat Superior

In a Bivens action such as the matter currently before this Court, the plaintiff must allege *specific facts* that show that each defendant was personally involved in the deprivation of the plaintiff's constitutional rights. Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)(emphasis added); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1951 ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Ivey v. Bd. of Regents of the University of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

Most significant in this particular matter is that under federal law, the doctrine of *respondeat superior* does not apply to Bivens actions. Iqbal, 129 S. Ct. at 1948 ("Government officials *may not be held liable* for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.")(emphasis added); Terrell v. Brewer, 935 F.2d 1015, 1018 (9th Cir. 1991); Bibeau v. Pac. Northwest Research Found., 188 F.3d 1105, 1114 (9th Cir. 1999). Individuals without personal involvement or participation in alleged unconstitutional acts, therefore, should be dismissed. Rizzo v. Goode, 423 U.S. 362 (1976). Supervisory government officials cannot be held accountable for the actions of subordinates "[s]ince the allegedly negligent lower level employees are not the 'employees'

---

[7] RTS means Return to Sender.

or 'agents' of the defendant [supervisors], but both are fellow servants of the [United States],"
who are immune from suit. See Sportique Fashions Inc. v. Sullivan, 597 F.2d 664, 666 (9th
Cir. 1979). The liability of a Bivens defendant, therefore, can only be predicated on his/her
actual and knowing participation in the alleged unconstitutional conduct. Boettger v. Moore,
483 F.2d 86, 87 (9th Cir. 1983).

In the pending matter, Stone has failed to articulate that DeRosa *personally and affirmatively* participated in depriving Stone of a constitutional right. There are no allegations that DeRosa had any part in inspecting or rejecting the subject package. Rather, DeRosa was not even aware of the rejection of the package until after the fact and Stone fails to allege otherwise. DeRosa was the warden at FCI Phoenix. As warden, DeRosa's job was to ensure the overall operation of FCI Phoenix, not the specific details of any one department. The day-to-day operations of the mail room were delegated to the inmate systems manager, who was responsible for applying national Bureau of Prisons policy to mail room operations. Hammet, the inmates systems officer who refused the package at the Post Office, reported to the inmate systems manager, who reported to the associate warden, who reported to DeRosa. Stone failed to establish that DeRosa was *personally involved* in any alleged constitutional violation. Furthermore, as previously articulated, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. Iqbal, 129 S. Ct. at 1948. Thus even assuming arguendo that a constitutional violation had occurred in the foregoing chain of events, DeRosa cannot be held liable for the actions of his subordinates and should be dismissed from the case. Id.

IV.     Conclusion

IT IS HEREBY ORDERED DENYING Plaintiff's Motion to Amend. (Doc. 48.)[8]

---

[8] For purposes of clarification, given the specific facts of this case, Lappin and Watts have been dismissed in their individual *and* official capacities for lack of personal jurisdiction. Plaintiff Stone bears the burden of establishing personal jurisdiction Menken v. Emm, 503 F.3d 1056. Plaintiff has failed to establish that they have had sufficient

**Watts, Lappin, and DeRosa are no longer Defendants in this case in any capacity.**

IT IS FURTHER ORDERED that the Clerk of Court shall close this case.

DATED this 28th day of October, 2009.

_____
Paul G. Rosenblatt
United States District Judge

---

minimum contacts, under the law, in both their individual and official capacities to establish personal jurisdiction.